## AFFIDAVIT

I, Rory Twyman, being duly sworn, depose and state the following:

### INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since December of 2024. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate, to make arrests with or without warrants and to execute search warrants under the authority of 21 U.S.C. § 878.

2. I hold a bachelor's degree in communication studies from Ohio University. As a Special Agent, I have completed the DEA Basic Agent Training Academy, which is a 17-week course in Quantico, Virginia that included training in, among other things, surveillance, undercover operations, confidential source management, search warrant operations, interview and interrogation. As a Special Agent, my experience includes participating in criminal arrests, conducting physical surveillance, trash seizures, searching for evidence during court-authorized search warrants, and authoring search warrants as well as subpoenas. I continue to receive training on a daily basis by conducting criminal drug investigations and drawing from the expertise of agents more experienced than myself.

1

**PURPOSE OF AFFIDAVIT**

3. This affidavit is made in support of an application for a federal arrest warrant and complaint against Eric Jason **CORSON** for knowingly and intentionally distributing 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii).

4. My knowledge of this investigation is based upon my own personal observations, as well as the observations and investigations conducted by other law enforcement officers and investigators concerning the facts and circumstances involved in the subject investigation. I have not included in this Affidavit all the facts known to me, but only that information sufficient to establish probable cause to believe that **CORSON** has committed the above offense.

**SUMMARY OF PROBABLE CAUSE**

5. In or about March 2025, members of the DEA Columbus District Office (CDO) began an investigation into the Eric Jason **CORSON** ("**CORSON**") Drug Trafficking Organization operating in the Southern District of Ohio. Investigators received information from Detective Adam Steele of the Chillicothe Police Department, in reference to **CORSON**. **CORSON** is a methamphetamine and fentanyl distributor operating in the Columbus and Chillicothe, Ohio areas.

6. On April 14, 2025, your Affiant was contacted by Detective Steele that known individuals from Chillicothe were headed to Columbus to purchase methamphetamine from **CORSON**. Detective Steele gathered the following information from a Confidential Source ("CS") from a local law enforcement office in the Southern District of Ohio:

2

    a.    two individuals, a male and a female, identified by name, were traveling from Chillicothe to Columbus and were driving a blue Kia Optima, bearing Ohio registration "HELEN1" ("Kia");

    b.    the male met with the CS on April 14 and advised that they were en route to Columbus that day to meet with **CORSON**, CS knows this individual to frequently meet with **CORSON** to purchase methamphetamine.

7. Your affiant notes that, the CS has been working with Local Law Enforcement as mentioned in paragraph 6 and DEA in an official capacity since March 2025. The CS is cooperating for case consideration, and has provided information to law enforcement that has resulted in the seizure of drugs and drug proceeds, the CS' information has been independently corroborated and as such, your Affiant believes the CS's information is reliable and credible

8.    Shortly after receiving this information, Detective Steele located the Kia traveling north on US-23.  On the same date the information was received, investigators from the CDO established surveillance on **CORSON** who was driving a black 2015 Buick Lacrosse, hereafter referred to as "Buick."

9.    Continuing on the same date, at approximately 5:24 p.m., investigators observed **CORSON**'s Buick parked inside the garage at Gina's Tire Service (2716 Sullivant Avenue, Columbus, Ohio) and **CORSON** standing outside. A few minutes later, investigators observed the Kia pull into the parking lot of Gina's Tire Service. Investigators observed two individuals in the Kia who are identified for purposes of this affidavit as "SUBJECT 1" and "SUBJECT 2." (SUBJECT 1 is the male referenced in paragraph 6a and b, SUBJECT 2 is the female mentioned in 6a).  At approximately 6:08 p.m., investigators observed the Kia follow the Buick leaving Gina's Tire Service, where surveillance was maintained on both the Buick and the Kia. Investigators observed the

3

Buick and Kia drive to an apartment complex in Columbus, Ohio, and never observed the Kia or Buick make any other stops on the way to the complex.

10. At that location, investigators observed the Buick and Kia park in separate locations within the complex. Investigators observed **CORSON** exit the Buick and walk into an apartment, located within the complex, for a short amount of time and then exit the apartment and enter the driver seat of the Buick. **CORSON** then drove to where the Kia was parked, SUBJECT 1 exited the Kia and walked over to the passenger side window of **CORSON**'s Buick. Shortly after, SUBJECT 1 walked back over to the Kia and entered the passenger seat and both vehicles then drove away from the apartment complex.

11. Investigators maintained surveillance on the Kia as it traveled back to Chillicothe and never observed the Kia make any other stops. At approximately 8:04 p.m., an Ohio State Highway Patrol (OSHP) Trooper conducted a traffic stop on the Kia on U.S 23 S, south of Blackwater Road for a traffic infraction. During the traffic stop, the OSHP Trooper observed suspected narcotics in plain view on the floor between SUBJECT 1's legs. A probable cause search was conducted on the Kia and the trooper located a crystal-like substance concealed within a Ziplock bag, and a white powdery substance in a small plastic baggie on the passenger side floor where SUBJECT 1 was sitting. The Trooper conducted a search of SUBJECT 1 and found a rock-like substance in a small bag in SUBJECT 1's pocket. Investigators field tested the white powdery substance (Exhibit 2), the crystal-like substance (Exhibit 3), and a rock-like substance (Exhibit 4). The suspected narcotics were sent to the DEA laboratory for further analysis, and confirmed to be:

      a.       approximately 23.40 grams of fentanyl (Exhibit 2);

      b.       approximately 219.4 grams of methamphetamine (Exhibit 3); and

      c.       approximately 0.969 grams of cocaine base (Exhibit 4).

All drugs are Schedule II controlled substances.

12. Following the traffic stop on the same date, SUBJECT 1 and SUBJECT 2 were transported to the OSHP Chillicothe Post and questioned. During the interview with SUBJECT 1 he stated they called the guy they met in Columbus and know him as "Unk." He stated that he and SUBJECT 2 drove to the tire shop, and he went into a store nearby. He said "Unk" got the money from the Kia. When "Unk's" car was done, at the tire shop, "Unk" said follow him. When both vehicles arrived at the apartment complex, he stated "Unk" told them to park in a certain spot and when "Unk" came back, "Unk" tossed the drugs through the window. When asked if he knew what the drugs were, SUBJECT 1 replied that they did because he was previously addicted to methamphetamine. Additionally, SUBJECT 1 confirmed that the individual that he met with at the tire shop was "Unk" (as noted above the subject that SUBJECT 1 met with at the tire shop and SUBJECT 1 identified as "Unk" was **CORSON**).

## CONCLUSION

13. Based upon the factual summary above, there is probable cause to believe that on or about April 14, 2025, in the Southern District of Ohio, **CORSON** did knowingly and intentionally distribute 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(viii).

*[Continued on next page]*

_____
RORY TWYMAN
Digitally signed by RORY TWYMAN
Date: 2025.05.12 11:33:54 -04'00'

Rory Twyman
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this <u>12th</u> day of May 2025.

_____
Kimberly A. Jolson
United States Magistrate Judge